Mark E. Merin (State Bar No. 043849)
Paul H. Masuhara (State Bar No. 289805)
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone:     (916) 443-6911
Facsimile:     (916) 447-8336
E-Mail: mark@markmerin.com
          paul@markmerin.com

Julius L. Finkelstein (State Bar No. 065788)
LAW OFFICE OF JULIUS L. FINKELSTEIN
P.O. Box 61024
Palo Alto, California 94306
Telephone:     (415) 793-5390
E-Mail: jlfinkelstein@yahoo.com

Attorneys for Plaintiffs
JOHN FINKELSTEIN and
JENNIFER FINKELSTEIN

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN FINKELSTEIN and JENNIFER FINKELSTEIN,<br><br>            Plaintiffs,<br><br>      vs.<br><br>SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE, CITY OF SAN MATEO, JEFFREY S. CICHOCKI, NICOLAS RYAN, and VISHAL D. JANGLA,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS, FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs JOHN FINKELSTEIN and JENNIFER FINKELSTEIN (collectively, "Plaintiffs") allege as follows:

### PRELIMINARY STATEMENT

1.      This is a civil rights action for declaratory and injunctive relief and for damages. It arises from efforts by Defendants JEFFREY S. CICHOCKI ("CICHOCKI"), NICOLAS RYAN ("RYAN"), and VISHAL D. JANGLA ("JANGLA") to identify the unknown suspect who used a

1

Skype account to "sext" with an underage teenage girl in Loudoun County, Virginia over the internet. The investigation began in Virginia, where Defendant CICHOCKI was employed as a sheriff's detective with the Loudoun County Sheriff's Office, and then quickly moved to California after Defendant CICHOCKI learned that the email address provided to Skype by this unknown suspect belonged to someone who lived in California. Plaintiff JOHN FINKELSTEIN became the sole focus of this investigation once Defendant CICHOCKI learned that this email address belonged to Plaintiff JOHN FINKELSTEIN even though there was no other evidence connecting Plaintiff JOHN FINKELSTEIN to this Skype account. As a result of the investigation's sole focus on the email address provided by the perpetrator no effort was made to obtain additional account information that was available from Skype. This additional account information could have provided more information about the perpetrator's location and identity and could have been obtained by simply sending a search warrant to Skype by email. In addition, neither Defendant CICHOCKI nor Defendant RYAN (who was employed as a detective for Defendant CITY OF SAN MATEO) made any effort to trace the IP address used by the unknown suspect, which Skype had identified as coming from Namibia, Africa, before seeking a warrant to search Plaintiff JOHN FINKELSTEIN in California. Since 2011, Ninth Circuit judicial precedent has required the tracing of IP addresses used by internet criminals to the places to be searched in order to show probable cause because account information provided by internet criminals is not sufficiently trustworthy to show probable cause. *See Chism v. Washington*, 661 F.3d 380 (9th Cir. 2011).

   2.   The investigation that Defendant CICHOCKI, Defendant RYAN and Defendant JANGLA (who was employed as a Deputy District Attorney for Defendant SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE) conducted recklessly disregarded the Fourth Amendment rights of the Plaintiffs. These Defendants used information, which they knew or should have known was untrustworthy, as well as judicial deception to show probable cause to a judge to procure a warrant to search the wrong person for child pornography with a search warrant affidavit that lacked probable cause on its face.

<u>Use of Untrustworthy Information to Establish Probable Cause</u>

   3.   The only evidence linking Plaintiff JOHN FINKELSTEIN to the Skype account used

2

by the perpetrator to sext with the victim was the fact that Plaintiff JOHN FINKELSTEIN's email address was provided to Skype to register this account. Defendants CICHOCKI, RYAN and JANGLA recklessly sought, approved, obtained and executed a warrant to search the Plaintiffs' residence, vehicles, computers and cell phones for child pornography with nothing to connect Plaintiff JOHN FINKELSTEIN to the perpetrator's Skype account other than the email address provided to Skype by the perpetrator. A copy of this search warrant, referred to in this Complaint as the "RYAN Warrant," and the affidavit used to obtain it, referred to in this Complaint as the "RYAN Affidavit," is attached to this Complaint as "Exhibit A." Using nothing more than the email address provided by the perpetrator of this internet crime to establish probable cause to search the Plaintiffs was a reckless disregard of Plaintiffs' Fourth Amendment rights because it was well-established law that the Fourth Amendment requires that information used to establish probable cause must be at least reasonably trustworthy information. Identifying information provided by the perpetrator of an internet crime, such as an email address, is not reasonably trustworthy information because to have any success as an internet criminal, regardless of whether the criminal is a thief, a hacker or a child pornography collector, it would be incumbent on the criminal to use other people's identities. Which is exactly what the internet criminal in this case did. According to a screenshot of the victim's smartphone, which both of these detectives possessed, the perpetrator's user profile showed that the person who created this Skype account was named "Peter Mayfair," lived in London, UK, in the West African time zone, and had the birthdate of a sixteen year old. A copy of this screenshot is attached to this Complaint as page 1 of "Exhibit C." This personal identifying information was obviously fake and obviously did not match any of Plaintiff JOHN FINKELSTEIN's personal identifying information.

4.     What's more, the law enforcement officials in this case submitted their warrant application to a judge without looking into whether Skype required users to verify ownership of the email addresses provided to Skype. At the time of this investigation Skype did not require users to verify their ownership of the email addresses provided to Skype. The lack of a requirement that the user verify ownership of the email address provided to Skype virtually guaranteed that an internet criminal would not provide an email address to Skype that could be used to identify him.

5.      In state court proceedings held after the RYAN Warrant was issued and executed, the San Mateo County Superior Court judge who issued the RYAN Warrant declared the warrant invalid and voided it. A copy of the written Findings and Orders made by that judge after hearing four-and-one-half days of testimony is attached to this Complaint as "Exhibit B." One of the findings made by that judge was that the failure of the detectives to learn whether Skype verified email address ownership was reckless:

> Neither took the next logical step of learning how creating a Skype account would require a suspect to reveal their actual email address. Yet, the email address was the lynchpin of their ability to connect the crimes to a suspect. Proceeding without this information was reckless. (Ex. B at 4:22-25.)

6.      Before the RYAN Affidavit was submitted to a judge it was reviewed and approved by Defendant JANGLA. Defendant JANGLA has testified in state court proceedings challenging the grounds on which the RYAN Warrant issued that it was a standard and accepted practice in San Mateo County to rely on unverified identifying information provided by the perpetrator of an internet crime, such as an email address, to establish probable cause to search the person whose information was provided. But for Defendant JANGLA's approval of the RYAN Affidavit, Defendant RYAN would not have presented his affidavit to a judge for a warrant.

7.      Defendant RYAN also testified in these state court proceedings that it was standard practice to rely on unverified identifying information provided by the perpetrator of an internet crime, such as an email address, to establish probable cause to search the person whose information was provided.

8.      Using untrustworthy information to procure a warrant to search the Plaintiffs was a reckless disregard of the Fourth Amendment rights of the Plaintiffs because it was well established law that the Fourth Amendment prohibits the use of untrustworthy information to establish probable cause.

<u>Use of False and Misleading Statement About Skype's Email Requirements</u>

9.      The RYAN Affidavit also misstated what Skype's email requirements were for creating an account. This false and misleading statement made it appear to the judge reviewing the affidavit that the perpetrator had some reason to provide his own email address to Skype. In fact,

4

Skype had no email requirements other than that the text entered as an email address be in the form of an email address, *i.e.*, "aa@bb.com". The judge who issued the RYAN Warrant and later voided it found that the description in the RYAN Affidavit of Skype's alleged email requirements for creating a Skype account was false and misleading. He also found that this false and misleading description was made with a reckless disregard for the truth and that without this false and misleading description of what was necessary to create a Skype account the RYAN Affidavit did not establish probable cause. That judge's findings included the following findings:

    i.   The only evidence that Defendant RYAN relied upon to connect the suspect, Plaintiff JOHN FINKELSTEIN, to the illegal conduct was an email address contained in the registration information for the Skype account. (Ex. B at ¶4.)

    ii.   Anyone could have randomly provided his email address during the creation of the Skype account. (Ex. B at 5:15-17.)

    iii.   The individual who created the Skype account had no reason to supply any accurate information. (Ex. B at ¶15.)

    iv.   Neither [detective] took the next logical step of learning how creating a Skype account would require a suspect to reveal their actual email address. Yet, the email address was the lynchpin of their ability to connect the crimes to a suspect. Proceeding without this information was reckless. (Ex. B at 4:22-25.)

    v.   Defendant RYAN's affidavit included the following passage: "In order to create a Skype account a valid email address is necessary. The email address used to create this account was 'johnrob@gmail.com'." This passage is a reckless, material misstatement of fact. (Ex. B at ¶13.)

    vi.   The Skype registration process required no more with respect to the email address than it be listed in some fashion by the individual who created the account. This is similar to asserting that a cell phone was used to commit a crime when it's only use was that its corresponding phone number was included in, for example, a credit card application. (Ex. B at 5:2-5.)

5

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Finkelstein v. San Mateo County District Attorney's Office*, United States District Court, Northern District of California, Case No. _____

vii. When this passage is excised from the RYAN Affidavit the remaining statements in the affidavit are insufficient to establish probable cause. (Ex. B at 4:11-17.)

10.     Using judicial deception to procure a warrant to search the Plaintiffs was a reckless disregard of the Fourth Amendment rights of the Plaintiffs because it was well established law that the Fourth Amendment prohibits the use of judicial deception to procure a search warrant.

<u>Use of False Statement About Substantiating the Use of a Proxy Server</u>

11.     The RYAN Affidavit also included a statement that the suspect's use of a proxy server had been substantiated. In fact, the suspect's use of a proxy server had not been substantiated. Defendants CICHOCKI and RYAN possessed no evidence that verified that the Namibian IP address used by the perpetrator was in fact from a proxy server. The only way to verify that an IP address is from a proxy server is to trace that IP address to a proxy server. Defendants CICHOCKI and RYAN never traced the perpetrator's Namibian IP address to a proxy server. Without this false statement the fact that the IP address was from Namibia, Africa excluded Plaintiff JOHN FINKELSTEIN, who resided in California, as a suspect and no warrant to search Plaintiff JOHN FINKELSTEIN could have issued.

<u>Omission of West African Time Zone Evidence</u>

12.     Defendants CICHOCKI and RYAN also omitted the fact that the perpetrator's Skype user profile displayed the West African time zone used in Namibia, Africa from the RYAN Affidavit. When the RYAN Affidavit was prepared Defendants CICHOCKI and RYAN each possessed a screenshot of the victim's smartphone (Ex. C at 1), which showed the perpetrator's Skype user profile with a West African time zone. The fact that the perpetrator's user profile displayed a West African time zone was inconsistent with the theory of probable cause advanced in the RYAN Affidavit that Plaintiff JOHN FINKELSTEIN had created the Skype account from California.

<u>Omission of Suspect's Statement That Skype Account Was Fake</u>

13.     Defendants CICHOCKI and RYAN also omitted from the RYAN Affidavit a Skype text message from the perpetrator admitting that the Skype account was "FAKE". Other Skype text messages showing the perpetrator "scoffing" at the victim after she threatened to go to the police were also omitted from the RYAN Affidavit. This behavior by the perpetrator lent credence to the

6

perpetrator's statement that the Skype account was fake. When the RYAN Affidavit was prepared both of these detectives possessed screenshots of the victim's smartphone displaying these Skype text messages. (*See* Ex. C at 12.) This evidence was inconsistent with the theory of probable cause advanced in the RYAN Affidavit that the perpetrator created the Skype account used in the crime with an email address which could be used to identify him.

<u>Lack of Probable Cause On Face of RYAN Affidavit</u>

14.     The RYAN Affidavit also lacked probable cause on its face because it failed to show that the IP address from Namibia, Africa used by the perpetrator had been traced to the person or place to be searched. Defendants CICHOCKI, RYAN and JANGLA recklessly disregarded the Fourth Amendment rights of the Plaintiffs because it was well established law in the Ninth Circuit that IP addresses used by internet criminals to register online accounts must be traced to the person or place to be searched in order to establish probable cause because account information provided by internet criminals is not sufficiently trustworthy to establish probable cause. *See Chism v. Washington*, 661 F.3d 380 (9th Cir. 2011).

15.     On the basis of the RYAN Affidavit, on January 14, 2016, a San Mateo County Superior Court judge issued a broad warrant ("RYAN Warrant") to search Plaintiff JOHN FINKELSTEIN for child pornography. At 7:04 a.m. on the morning of January 18, 2016, Defendant RYAN, accompanied by Detective CICHOCKI and other law enforcement agents executed the RYAN Warrant and performed a four-hour long search of the Plaintiffs' apartment, vehicles, computers, hard drives and cell phones during which time the Plaintiffs had their freedom of movement restricted. No child pornography or evidence of other crimes was found as a result of these unlawful searches or as a result of later searches conducted unlawfully in Virginia.

16.     But there is more. In addition to recklessly disregarding Plaintiffs' Fourth Amendment rights by relying on untrustworthy information, judicial deception and a warrant affidavit that lacked probable cause on its face to establish probable cause for a warrant to search Plaintiffs, Defendants CICHOCKI, RYAN and JANGLA also recklessly violated Plaintiff JOHN FINKELSTEIN's Fourth Amendment rights by having the computers, hard drives and cell phones seized from him, including a laptop computer provided by his employer, which contained trade

secrets and confidential business information, searched in Virginia without judicial authorization, probable cause or exigent circumstances. Defendants CICHOCKI, RYAN and JANGLA should have known that having property seized from Plaintiff JOHN FINKELSTEIN under the authority of a California warrant searched in Virginia without judicial authorization, probable cause or exigent circumstances created a substantial risk of a Fourth Amendment violation because it was well established law that the Fourth Amendment requires judicial authorization, probable cause or exigent circumstances to conduct a search. The RYAN Warrant did not authorize Defendant CICHOCKI nor persons in Virginia to seize or search Plaintiff JOHN FINKELSTEIN's property.

17.     Although no charges were filed against Plaintiff JOHN FINKELSTEIN, just being investigated for child pornography has created a permanent stigma on Plaintiff JOHN FINKELSTEIN's record and reputation. A year after their unlawful searches failed to yield any evidence of child pornography, Defendants CICHOCKI and RYAN testified in state court proceedings that Plaintiff JOHN FINKELSTEIN was still a suspect. Incredibly, even after the unlawful searches of Plaintiff JOHN FINKELSTEIN's property failed to yield any child pornography or evidence of other crimes Defendant CICHOCKI sought criminal charges against Plaintiff JOHN FINKELSTEIN in Virginia. Fortunately, the prosecuting attorney in Virginia declined Defendant CICHOCKI's request to file criminal charges against Plaintiff JOHN FINKELSTEIN.

## JURISDICTION

18.     This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 because this action arises under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983. This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over Defendants JANGLA and RYAN because, on information and belief, they are residents of the state of California.

20.     This Court has personal jurisdiction over Defendant SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE because the District Attorney of the County of San Mateo is an officer of the County of San Mateo, which is a county organized and existing under California law situated in this judicial district.

8

21.     This Court has personal jurisdiction over Defendant CITY OF SAN MATEO because it is a municipal corporation organized and existing under California law which is situated in this judicial district.

22.     This Court has specific personal jurisdiction over Defendant CICHOCKI under Federal Rule of Civil Procedure 4(k)(1)(A) and California Civil Procedure Code § 410.10 based on the following facts: (1) Defendant CICHOCKI's activities were directed at procuring a search of Plaintiff JOHN FINKELSTEIN in California and in this judicial district. (2) Plaintiff JOHN FINKELSTEIN is a California resident who was residing in this judicial at that time. (3) Defendant CICHOCKI personally accompanied Defendant RYAN during the search which took place in this judicial district and took physical possession of property seized from Plaintiff JOHN FINKELSTEIN in this judicial district for transportation back to Virginia. (4) All of the Plaintiffs' claims against Defendant CICHOCKI arise from his interactions with law enforcement authorities in this judicial district to procure a warrant to search Plaintiff JOHN FINKELSTEIN in this judicial district and Defendant CICHOCKI's actions seizing Plaintiff JOHN FINKELSTEIN's property in this judicial district and then removing the seized property to Virginia for searching there.

23.     The Court may award damages and grant declaratory and injunctive relief for the constitutional violations alleged in this complaint pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 2201, and/or Federal Rules of Civil Procedure 57 and 65.

## VENUE & INTRADISTRICT ASSIGNMENT

24.     Venue and Intradistrict Assignment is proper in this Court and in this Division under 28 U.S.C. § 1391(b)(2) and Civil L. R. 3-2(d), because a substantial and significant part of the events and omissions giving rise to the claims alleged in this Complaint occurred in San Mateo County, California. The search warrant affidavit used to obtain the warrant to search Plaintiffs was prepared and sworn to in San Mateo County, by a law enforcement official employed in San Mateo County; the affidavit was reviewed and approved by a San Mateo County Deputy District Attorney; the search warrant was issued by a San Mateo County Superior Court judge; and, the search and seizure took place in San Mateo County, where the plaintiffs resided at the time of this search.

## PARTIES

25.     Plaintiffs JOHN FINKELSTEIN and JENNIFER FINKELSTEIN were at all times mentioned herein husband and wife, citizens of the United States, and residents of San Mateo County, California. At the time of the search described in this complaint they were residing in the apartment in San Mateo, California where the unlawful search took place. Plaintiff JOHN FINKELSTEIN is a Stanford University trained computer software engineer who has worked for Twitter and Hulu, and has also worked for several Silicon Valley startup companies.

26.     Defendant SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE is a "public entity" within the definition of Cal. Gov. Code § 811.2. The County of San Mateo is a county duly organized and existing under California law situated in the Northern District of California judicial district. The San Mateo County District Attorney is an officer of the County of San Mateo, the public prosecutor for San Mateo County, the chief law enforcement officer in San Mateo County, and the final policymaker on matters of law enforcement in San Mateo County. The law enforcement policies of the San Mateo County District Attorney's Office are law enforcement policies of the County of San Mateo for liability purposes under 42 U.S.C. § 1983.

27.     Defendant CITY OF SAN MATEO is a "public entity" within the definition of Cal. Gov. Code § 811.2. Defendant CITY OF SAN MATEO is a municipal corporation organized and existing under the laws of the State of California situated in San Mateo County, California. The law enforcement policies of the Chief of Police of the San Mateo Police Department are policies of Defendant CITY OF SAN MATEO for liability purposes under 42 U.S.C. § 1983.

28.     Defendant JEFFREY S. CICHOCKI is a police detective employed by the Loudoun County Sheriff's Office in the state of Virginia. At all times relevant to this action Defendant CICHOCKI was an agent and employee of the Loudoun County Sheriff's Office acting under color of state law and within the course and scope of his agency and employment. Defendant CICHOCKI instigated the efforts by Defendant RYAN to procure a warrant to search Plaintiff JOHN FINKELSTEIN's residence, vehicles, computers, hard drives and cell phones for child pornography. Defendant CICHOCKI was present in San Mateo County during the unlawful search, took possession of Plaintiff JOHN FINKELSTEIN's computers and digital devices in San Mateo County,

10

California, and transported them to Virginia for a forensic examination and further searching in Virginia. Defendant CICHOCKI is sued individually.

29.     Defendant NICOLAS RYAN is a police detective employed by the San Mateo Police Department for the City of San Mateo, California. At all times relevant to this action Defendant RYAN was an agent and employee of the San Mateo Police Department acting under color of state law and within the course and scope of his agency and employment. Defendant RYAN prepared the search warrant application attached to this Complaint as "Exhibit A"; subscribed and swore to the truth of Exhibit A before a San Mateo County Superior Court judge; conducted the searches carried out pursuant to the warrant that issued as a result of this search warrant application; and, seized Plaintiff JOHN FINKELSTEIN's computers and digital devices. He also turned these seized items over to Defendant CICHOCKI for further searching in Virginia. Defendant RYAN is sued individually.

30.     Defendant VISHAL D. JANGLA is a Deputy District Attorney employed by Defendant SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE. At all times relevant to this action Defendant JANGLA was an agent and employee of Defendant SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE acting under color of state law and within the course and scope of his agency and employment as a San Mateo County Deputy District Attorney. Defendant JANGLA reviewed and approved the search warrant application which was used to procure the search warrant ordering the search of the Plaintiffs' apartment, vehicles, computers, hard drives and cell phones for child pornography. Defendant JANGLA also approved the release of the computers, hard drives and cell phones seized from Plaintiff JOHN FINKELSTEIN to Defendant CICHOCKI for searching in Virginia. Defendant JANGLA's acts in reviewing and approving the search warrant affidavit and approving the release of the computers, hard drives and cell phones seized from Plaintiff JOHN FINKELSTEIN to Defendant CICHOCKI for searching in Virginia were investigatory in nature and did not constitute advocacy. Defendant JANGLA is sued individually.

31.     At all times relevant to this action, Defendants CICHOCKI, RYAN and JANGLA were knowingly aiding and abetting or acting in concert with each other with respect to the preparation of the RYAN Affidavit, the submission of the RYAN Affidavit to a judge, the execution

of the warrant that issued as a result of the RYAN Affidavit, the release of the property seized under the RYAN Warrant to Defendant CICHOCKI, and the subsequent searching of the seized property in Virginia.

## FACTUAL ALLEGATIONS

32.     Plaintiffs incorporate all of the preceding paragraphs as if they were fully set forth again at this point.

### Defendant CICHOCKI's Investigation in Virginia

33.     On November 24, 2015, the Loudoun County Sheriff's Office received a report of an unknown suspect "sexting" a 14 year old female during a Skype internet video call.

34.     Skype is an internet communications company that provides voice and video calling over the internet using computers, tablets, and mobile phones. Skype users may transmit both text and video messages, and exchange digital files containing images, text, and video. The Skype application (commonly referred to as an "app") is available for the Windows, Mac OS, Android, Blackberry, IOS, and the Windows Phone operating systems.

35.     According to Defendant CICHOCKI, the victim reported using her smartphone to show her breasts and genitals to the suspect during a Skype video call with the suspect who threatened to post compromising videos of her on the internet unless she continued sexting with him.

36.     Part of the evidence possessed by Defendant CICHOCKI consisted of 16 screenshots of the victim's smartphone. A copy of these 16 screenshots is attached to this Complaint as "Exhibit C." The first of these screenshots (Ex. C at 1) shows the suspect's Skype profile which lists the suspect's Skype account user name as "johnrobbins6", the name "Peter Mayfair", the city and country London, UK, and the birthdate and picture of a sixteen year old boy.

37.     Defendant CICHOCKI followed up on this information by asking the FBI to send an administrative subpoena to Skype for registration information for the "johnrobbins6" Skype account. The only information that Skype provides in response to an administrative subpoena is the account creation date and time, the account creation IP address, the account creation country, the current email address for the account, and the language used at the time of account registration.

Skype also collects and retains additional information that can be used to identify the user of a Skype account. This additional identifying information includes IP addresses for devices that connect to the Skype service on dates subsequent to the date that the account was first registered, information about cellular devices which have the Skype application installed on them, and WiFi networks used to connect to the Skype service. Skype will only provide this additional identifying information in response to a search warrant or court order. Defendant CICHOCKI made no effort to send a search warrant to Skype for this additional identifying information even though Skype accepts and responds to search warrants from law enforcement agents that are served electronically through email.

38.     In response to an administrative subpoena sent to Skype, Skype reported that the "johnrobbins6" account was created on August 16, 2015, with an IP address of 41.182.116.161 at the time of account creation. Skype also reported that this IP address was from Namibia, Africa, and that the email address associated with this account was "johnrob@gmail.com".

39.     The "IP" part of an IP address stands for "Internet Protocol." The "address" part refers to a number that is uniquely associated with a person's online activity somewhat like a telephone number when someone makes a telephone call. Every computer device connected to the internet has a unique IP address assigned to it when using the internet.

40.     When Defendant CICHOCKI conducted this investigation there were free websites available, such as "WHATISMYIPADDRESS.COM", that could be used to trace an IP address. By simply typing the IP address into the form on the website the identity of the internet service provider (ISP) for that IP address and whether the IP address is an address that is known to be from a proxy server can be learned. Internet service providers typically retain information about the identity of the subscriber using a particular IP address on a particular date and time. Defendant CICHOCKI made no effort to trace the IP address used by the suspect when registering this Skype account to see who the ISP was and whether the IP address was an address known to be from a proxy server when investigating this sexting incident even though this information was readily available to him.

41.     Instead of pursuing these additional leads, Defendant CICHOCKI focused entirely on the email address provided by the perpetrator to Skype. Defendant CICHOCKI had another

administrative subpoena sent to Google, the provider of the email address provided to Skype by the perpetrator. The administrative subpoena sent to Google returned the name "John Robert Finkelstein" and Plaintiff JOHN FINKELSTEIN's phone number.

42.     An administrative subpoena sent to AT&T for subscriber information for this phone number returned Plaintiff JOHN FINKELSTEIN's street address in San Mateo, California.

43.     Having identified the owner of the email address provided to Skype by the perpetrator, Defendant CICHOCKI decided to seek a warrant to search the email address owner for child pornography based on nothing more than an email address to connect the email address owner to the crime he was investigating. When Defendant CICHOCKI decided to seek this search warrant Defendant CICHOCKI knew that other personal identifying information provided to Skype by the suspect, such as the name Peter Mayfair, the city and country London, UK, and the birthdate and picture of a sixteen year old boy, did not match Plaintiff JOHN FINKELSTEIN's personal identifying information and was most likely fake. Defendant CICHOCKI also knew that the IP address used by the suspect was from Namibia, Africa, and had not been traced to the Plaintiffs or their residence. Defendant CICHOCKI also possessed a screenshot of the perpetrator's Skype user profile (Ex. at1) which prominently displayed a West African time zone. Defendant CICHOCKI knew, or should have known, that Skype did not verify email address ownership because this information was readily available to him when he decided to seek this warrant.

44.     Defendant CICHOCKI contacted the San Mateo Police Department for assistance in obtaining a California warrant to search Plaintiff JOHN FINKELSTEIN for child pornography in California. Defendant CICHOCKI prepared an affidavit describing the results of his investigation, which amounted to nothing more than identifying the owner of the email address provided to Skype by the perpetrator, and gave a copy of this affidavit to San Mateo City Police authorities to assist them in obtaining a California warrant. A copy of this affidavit, referred to in this Complaint as the "CICHOCKI Affidavit", is attached hereto as "Exhibit D".

45.     Defendant RYAN worked closely with Defendant CICHOCKI to prepare a California search warrant application for a warrant to search Plaintiff JOHN FINKELSTEIN, his apartment, vehicles and computing devices for child pornography using information from the CICHOCKI

14

Affidavit.

<u>Reliance On Nothing More Than the Email Address</u>

46.    Defendants CICHOCKI and RYAN have both acknowledged in state court proceedings brought by Plaintiff JOHN FINKELSTEIN to challenge the grounds upon which this warrant issued that when they sought this warrant they were relying on nothing more than the email address associated with this Skype account to connect Plaintiff JOHN FINKELSTEIN to the Skype account used in the sexting incident.

47.    Defendant CICHOCKI gave the following testimony on January 12, 2017, acknowledging that the only evidence he possessed connecting Plaintiff JOHN FINKELSTEIN to the Skype account used in the sexting incident was the email address used to register the account:

> Q. Did you have any evidence available to you, at the time you sought the search warrant through Detective Ryan, that connected Mr. Finkelstein to the Skype account used to commit the crime other than the e-mail address provided to Skype?
>
> A. The registered e-mail used in the crime was that of Mr. Finkelstein's. That was the evidence that I had.
>
> Q. And that was the only evidence that you had connecting Mr. Finkelstein to the Skype account, isn't that true?
>
> A. That is correct.

48.    Defendant RYAN gave the following testimony on February 27, 2017, acknowledging that the only evidence he possessed connecting Plaintiff JOHN FINKELSTEIN to the Skype account used in the sexting incident was the email address used to register the account:

> Q. Well, you had nothing but an e-mail address as a lead in this case; correct?
>
> A. That was our primary lead.
>
> Q. What other lead did you have?
>
> A. There was a lot of circumstances that led us to this. But the primary
>
> -- I agree with you that the primary connection between the suspect and the Skype account is the e-mail address.
>
> Q. What other connection did you have?
>
> A. To link the suspect to the Skype account?

15

Q. Yes.

A. That is the only connection.

Information That Was Available About the Unreliability of Skype Email Addresses

49.    At the time of this investigation Skype did not require persons registering Skype accounts to verify email address ownership such as by opening an email message sent to the email address provided and "clicking" on a special link contained in the message. Not only did Skype not verify email address ownership, but Skype also allowed accounts to be registered and created by simply entering text in the *form* of a valid email address (*e.g.*, "aa@bb.com") into the Skype account registration form. The text entered as an email address did not have to be a working email address that was capable of being used to send and receive email messages.

50.    At the time of this investigation neither Defendant CICHOCKI nor RYAN possessed any evidence that Skype verified the ownership of email addresses used to register and create Skype accounts.

51.    At the time of this investigation information that a Skype account could be registered and created with someone else's email address was readily available to Defendants CICHOCKI and RYAN by simply creating a Skype account which would have shown them that verifying ownership of the email address provided to Skype was not necessary to register and create a Skype account. In addition, the Skype website help page, which explained the steps for creating a Skype account, showed no step for verifying the ownership of the email address provided to create an account.

52.    At the time of this investigation news stories from *Forbes*, *NBC News*, *CNN*, *Newsmax* and *Information Week* posted on the internet reported that Skype accounts could be created with someone else's email address.

53.    Defendant JANGLA has also acknowledged in testimony in state court proceedings that when he approved the RYAN Affidavit he knew from his prior work in software development that a lot of online services do not verify the ownership of email addresses provided to register and create online accounts and that they only require that the text provided as an email address only conform to the syntax of a valid email address.

54.    At the time of this investigation Defendants CICHOCKI, RYAN and JANGLA knew,

16

or should have known, that relying on nothing more than an email address provided to register a Skype account used in a crime to connect the email address owner to the crime posed a substantial risk of searching the wrong person and the wrong residence because information showing that Skype did not require verification of the ownership of email addresses used to register Skype accounts was readily available to Defendants when they sought and approved this warrant.

55.     The San Mateo County Superior Court judge who presided over the state court proceeding challenging the grounds on which this warrant was issued concluded that the failure of the detectives to learn whether Skype verified email address ownership reckless:

> Neither took the next logical step of learning how creating a Skype account would require a suspect to reveal their actual email address. Yet, the email address was the lynchpin of their ability to connect the crimes to a suspect. Proceeding without this information was reckless. (Ex. B at 4:22-25.)

<u>Misrepresenting the Reliability of the Email Addresses Provided to Skype</u>

56.     The RYAN and CICHOCKI Affidavits both contained affirmative misrepresentations regarding the reliability of email addresses provided to Skype to register Skype accounts as a means of identifying the person who created the account.

57.     Defendant CICHOCKI's affidavit included the statement: "Skype requires authorization through a working email in order to be accessed." (Ex. D at 4.) This statement is false because in fact Skype did not require authorization through a working email in order to be accessed. In fact, the text entered as an email address did not even have to be a working email address capable of sending and receiving email messages.

58.     Defendant RYAN's affidavit included the following passage: "In order to create a Skype account a valid email address is necessary. The email address used to create this account was 'johnrob@gmail.com'." (Ex. A at 6.) This statement is false and misleading because an email address provided to Skype to register an account only had to be "valid" in *form* and did not have to be "valid" in a way that was meaningful to determining probable cause; and, the email address did not have to be "used" but only provided to Skype by simply typing the address into the Skype account registration form.

59.     When Defendants RYAN and CICHOCKI swore to the truth of their statements about

17

what was necessary to register and create a Skype account neither of them had any personal

knowledge of what was necessary to register and create a Skype account. In addition, there were

obvious reasons to doubt that their statements were true because information that Skype allowed

accounts to be registered and created with other people's email addresses was readily available to

them. In addition, other information provided to Skype by the perpetrator, such as the "Peter

Mayfair" name, the London, UK city and country, the West African time zone, and the birthdate and

picture of a sixteen year old boy, was either false or pointed to someone other than the owner of the

email address.

### Defendant JANGLA's Approval of the RYAN Affidavit

60.     Before submitting his search warrant affidavit to a judge, Defendant RYAN submitted

his search warrant affidavit to Deputy District Attorney Defendant JANGLA for approval. After

reviewing the RYAN Affidavit Defendant JANGLA approved Defendant RYAN's affidavit for

submission to a judge even though he knew, or should have known, that Skype had not verified the

ownership of the email address relied on to establish probable cause. Defendant RYAN would not

have submitted his search warrant affidavit to a judge for a warrant without Defendant JANGLA's

approval.

61.     When Defendant JANGLA approved the RYAN Affidavit Defendant JANGLA knew

that while websites typically check the format of email addresses used to register online accounts, a

lot of online services do not require verification of the ownership of email addresses used to register

accounts. Defendant JANGLA also knew that email accounts get hacked all the time. However,

Defendant JANGLA did nothing to ensure that information about the unreliability of using an email

address as a means of identification was included in the Defendant RYAN Affidavit.

### San Mateo County District Attorney's Office's Standard Operating Procedure

62.     On February 28, 2017, San Mateo County Deputy District Attorney Defendant

JANGLA testified in state court proceedings about his approval of the RYAN Affidavit for

submission to a judge. Defendant JANGLA has testified that he has reviewed more than a hundred

warrants that involved electronic evidence or digital evidence. When asked about the Defendants

CICHOCKI and RYAN's failure to look into whether Skype verified the ownership of email

addresses Defendant JANGLA gave the following testimony showing that it was a standard and accepted practice to rely on unverified identifying information provided by the perpetrator of an internet crime, such as an email address, to establish probable cause to search the person whose information was provided:

> A. ...The question is what is a reasonable investigative technique to try to get to a suspect and to have sufficient probable cause? That's the question. What is the standard practice and what is an acceptable practice as opposed to what is ideal in theory.
>
> And so, what I can tell you about is what is a standard practice and acceptable practice. And as I indicated, I have reviewed a lot of these electronic warrants. And I have not come across an investigation, in the warrants I have reviewed or in the trainings that I have attended, where a step has been to verify that the service validates the e-mail address.
>
> Q. Do you think it is reasonable to rely on the documents that you get from a corporation, in this case, Skype?
>
> A. That's what we have to go on. So, yes, of course.
>
> Q. And would that be the standard practice, in your opinion, for detectives or officers writing search warrants?
>
> A. Always.

<u>San Mateo Police Department's Standard Operating Procedure</u>

63.     On January 14, 2016, Detective RYAN submitted his search warrant affidavit to a San Mateo County Superior Court Judge after receiving approval from Defendant JANGLA. On February 27, 2017, Defendant RYAN testified in state court proceedings that it was standard practice to rely on unverified identifying information provided by the perpetrator of an internet crime, such as an email address, to establish probable cause to search the person whose information was provided:

> "I don't investigate Skype. I don't investigate AT&T. I don't investigate Google, and I don't investigate Microsoft." "It is the same thing I would do on any case. When I receive information from AT&T or any other major corporation, I don't go and fact check what they do."

<u>Failure to Associate IP Address with the Plaintiffs</u>

64.     When they sought this warrant Defendants CICHOCKI, RYAN and JANGLA never attempted to associate the IP address used by the suspect, which Skype had reported was from

19

Namibia, Africa, to the Plaintiffs, their residence, their places of employment or to anyone associated with either of them. Associating the perpetrator's Namibian IP address to either the Plaintiffs or to the physical location to be searched was necessary to ensure that the correct individuals and correct physical locations were searched.

65.     Defendants CICHOCKI, RYAN and JANGLA knew, or should have known, that without a direct link between the IP address associated with the illegal activity and the Plaintiffs or their residence, there was a substantial risk of searching the wrong person and the wrong residence. They also should have known that there was no probable cause to search the Plaintiffs or their residence because of the 2011 decision of the Ninth Circuit in *Chism v. Washington*, 661 F.3d 380 (9th Cir. 2011), which held that simply identifying the person whose personal information was provided to register an online account associated with child pornography did not establish probable cause to search that person for child pornography when the IP address associated with that account was not associated with that person.

Omission of West African Time Zone Evidence

66.     But there is more. When Defendants Defendant CICHOCKI and Defendant RYAN prepared their affidavits they each possessed 16 screenshots of the cell phone used by the victim to communicate with the suspect over the Skype service. A copy of these 16 screenshots is attached to this Complaint as "Exhibit C". The first of these screenshots (Ex. C at 1) displays the suspect's Skype profile with a "Peter Mayfair" name, a London, UK, city and country, and the birthdate and picture of a sixteen year old boy. None of this personal identifying information matched Plaintiff JOHN FINKELSTEIN's personal identifying information. This Skype profile information was obviously fake.

67.     The perpetrator's Skype profile also displayed the GMT+2 time zone immediately adjacent to the London, UK city and country information on the suspect's profile. When this sexting incident is alleged to have occurred the time zone for London, UK was GMT, the time zone for Namibia, Africa, where Skype reported the suspect's IP address was from, was GMT plus 2 hours (GMT+2), the time zone for California, where the Plaintiffs resided, was GMT minus 8 hours (GMT-8). This evidence clearly pointed to someone from West Africa and not to Plaintiff JOHN

20

FINKELSTEIN.

68.     When Defendant CICHOCKI and RYAN sought this warrant they possessed no evidence that explained how Plaintiff JOHN FINKELSTEIN could have created a Skype profile from California that displayed a West African time zone. On February 27, 2017, more than a year after this search warrant was procured and served, Defendant RYAN was unable to explain in state court proceedings how someone in California created a Skype profile that displayed a West African time zone as the following excerpt from his testimony shows:

> Q. Detective Ryan, do you have a good explanation for how the person you wanted to search in the GMT-minus-eight-hours time zone had a Skype profile that displayed the GMT-plus-two time zone?
> A. No.

69.     Without evidence that explained how the person they wanted to search in California created a Skype profile that displayed a West African time zone, the fact that the suspect's Skype account profile displayed a West African time zone excluded Plaintiff JOHN FINKELSTEIN as a suspect and therefore negated probable cause. Both the RYAN and CICHOCKI Affidavits omitted the fact that that the suspect's Skype profile displayed a West African time zone.

70.     Had Defendants included this West African time zone information in their search warrant application a reasonable judge reviewing their application could not have found probable cause to search Plaintiff JOHN FINKELSTEIN in California in the absence of evidence explaining how Plaintiff JOHN FINKELSTEIN created a Skype profile displaying a West African time zone.

<u>Omission of Skype Text Messages Negating Probable Cause</u>

71.     When Defendants CICHOCKI and RYAN sought this warrant they both possessed screenshots of the victim's phone which displayed Skype text messages from the perpetrator scoffing at the victim when she threatened to have the perpetrator arrested. (Ex. C at 12) These messages, which were omitted from both the RYAN and CICHOCKI Affidavits, included the following messages from the suspect responding to the sexting victim's threats to have the suspect arrested:

> "lmao" [laughing my ass off]
> "I told u this account is FAKE"

"u can go running to the cops it wont do you any good"

72.     These messages negated Defendants CICHOCKI and RYAN's theory of probable cause that the Skype account had been created with an email address owned by the perpetrator because the content of the messages suggested that the perpetrator had not used his own email address to register the Skype account. These messages also demonstrated a complete lack of concern on the part of the perpetrator about being identified by the police from the information that he had provided to Skype.

<u>Misrepresenting Use of a Proxy Server</u>

73.     But there is more. To make it possible for a judge to find probable cause to search someone in California when the IP address used by the suspect to register and create the account associated with the sexting incident was identified by Skype as coming from Namibia, Africa, the CICHOCKI and RYAN Affidavits had to explain how it could be possible for someone in California to connect to the Skype website with an IP address from Namibia, Africa. The only explanation offered in the CICHOCKI and RYAN Affidavits to explain the Namibian IP address was that the perpetrator's use of a proxy server had been substantiated. (Ex. D at 3; Ex. A at 6.)

74.     A proxy server is a computer server that is connected to the internet and can be used as an intermediary between a user's computer and a website to conceal the user's IP address from the website. A proxy server can be configured to allow a user to connect to the proxy server remotely over the internet and then use the proxy server to make the connection to the website for the user. If the proxy server is configured correctly the website will only see the proxy server's IP address and will not see the IP address of the user's computer that was used to connect to the proxy server.

75.     The only way to verify or substantiate that an IP address is from a proxy server is to match that IP address to an IP address that is known to be used by a proxy server. However, Defendants CICHOCKI and RYAN never traced the IP address used by the perpetrator to a proxy server when the CICHOCKI and RYAN Affidavits were prepared. What's more, had they tried tracing the IP address used by the perpetrator they would not have found a match to a proxy server because the IP address used by the perpetrator was not an IP address that was known to be used by a

proxy server. When Defendant CICHOCKI and RYAN swore to the truth of their affidavit statements that the use of a proxy server had been substantiated they both knew that the perpetrator's IP address had not been matched to a proxy server.

<u>Misrepresenting the Purpose of the Warrant</u>

76.    Defendant RYAN's dishonesty did not stop there. Defendant RYAN averred in his affidavit that the purpose of the warrant was to gather evidence of the commission of California crimes committed in San Mateo, California. (Ex. A at 3.) In fact, the purpose of the warrant was, as Defendant CICHOCKI had averred in his earlier affidavit (Ex. D at 1), to search for and seize evidence of the commission of crimes committed in Virginia for use in a prosecution in Virginia. Defendant RYAN never disclosed to the judge issuing his warrant that evidence seized under the authority of a California warrant would be taken to Virginia, beyond the territorial jurisdiction of the judge issuing the warrant, for examination, searching, and copying by persons in Virginia who had no authority to examine the private information contained in Plaintiff JOHN FINKELSTEIN's computing devices.

77.    Defendant RYAN's dishonesty continued even after the warrant was executed. In a Search Warrant Return made on February 2, 2016, sixteen days after the seized property had been turned over to Defendant CICHOCKI and taken to Virginia for searching there, Defendant RYAN swore before the judge who issued the warrant that the property seized under the warrant would be retained by Defendant RYAN subject to further order of the court knowing that when he swore to that statement he no longer had custody of the seized property and that the seized property was in Virginia, beyond the territorial jurisdiction of the California judge who issued the warrant.

<u>Facts Showing Deliberate or Reckless Disregard For the Truth</u>

78.    Both Defendants CICHOCKI and RYAN swore to statements about Skype's email requirements in their affidavits which were essential to their showing of probable. These statements were written as if they were facts which they had personally perceived and therefore knew to be true. In fact, these statements were not personally perceived facts and were no more than beliefs which they claimed to have about Skype. These statements were both false.

79.    When Defendant RYAN swore that a valid email address was necessary to create a

Skype account and that Plaintiff JOHN FINKELSTEIN's email address was "used" to create the Skype account neither he nor Defendant CICHOCKI had any idea of what was actually required to create a Skype account. What's more, there was information readily available on the internet that showed that the statement about Skype's email requirements was false.

80.     When Defendant RYAN swore that the suspect's use of a proxy server had been substantiated both Defendant RYAN and CICHOCKI knew that the IP address used by the perpetrator had not been traced to a proxy server and that they had no evidence verifying that the particular IP address used by the perpetrator was from a proxy server. This shows more than recklessness – it shows intentionality.

81.     All of the omissions were facts in the possession of both Defendants CICHOCKI and RYAN.

82.     The multiple misrepresentations in, and omissions from, the RYAN and CICHOCKI Affidavits all bolstered the case for probable cause.

83.     Cumulatively, the omissions and misrepresentations purged the RYAN and CICHOCKI Affidavits of any reference to the possibility that someone other than Plaintiff JOHN FINKELSTEIN was responsible for creating the Skype account used in this sexting incident.

<u>Execution of RYAN Warrant</u>

84.     At 7:04 a.m. on the morning of January 18, 2016, Plaintiff JOHN FINKELSTEIN and his wife, Plaintiff JENNIFER FINKELSTEIN, were asleep in their apartment in San Mateo, California when a dozen or so law enforcement agents showed up with a search warrant looking for child pornography. The Plaintiffs were awakened and forced to wait outside their apartment in a common hallway while the officers cleared their apartment. Plaintiff JOHN FINKELSTEIN was wearing nothing but his underwear and Plaintiff JENNIFER FINKELSTEIN was wearing only her pajamas.

85.     Given the early hour of the search, Plaintiffs believe and thereon allege that a number of the residents of the apartment complex where Plaintiffs reside were present to hear and see the spectacle of a dozen or so law enforcement agents wearing police raid jackets making entry into the Plaintiffs' apartment.

86.     Over the course of next four hours while the Plaintiffs' computers and cell phones were searched, the Plaintiffs were detained in their apartment and their freedom of movement was restricted.

87.     During this four hour search Plaintiff JENNIFER FINKELSTEIN was forced to use the bathroom with the bathroom door open and a female officer inside the bathroom with her.

88.     During this four hour search Plaintiff JENNIFER FINKELSTEIN was forced to walk the family dog accompanied by an officer wearing a police raid jacket in front of her neighbors' apartments.

89.     During the four hour search Plaintiff JENNIFER FINKELSTEIN was taken to a police car where Defendants CICHOCKI and RYAN tried to show her pictures of the 14 year old victim in order to persuade her that her husband was someone who uses the internet to sexually exploit children and collect child pornography.

<u>Unlawful Removal of Seized Property to Virginia</u>

90.     At the conclusion of the searching in San Mateo Defendant RYAN seized Plaintiff JOHN FINKELSTEIN's computers and external hard drives, which he uses in his work as a software engineer, as well as some of his cell phones. The warrant authorizing this seizure authorized California peace officers in the County of San Mateo to conduct the searching and seizing and did not authorize Defendant CICHOCKI or persons in Virginia, who were not California peace officers, to search or seize any of Plaintiff JOHN FINKELSTEIN's property.

91.     After seizing Plaintiff JOHN FINKELSTEIN's property Defendant RYAN turned over to Defendant CICHOCKI the property seized from Plaintiff JOHN FINKELSTEIN without judicial authorization to do so.

92.     Defendant CICHOCKI took possession of the property seized from Plaintiff JOHN FINKELSTEIN and removed his property to Virginia where the contents of the seized property were searched and copied by persons who had no judicial authorization to do so. Defendant CICHOCKI had no judicial authorization to seize Plaintiff JOHN FINKELSTEIN's property or to have it searched and copied in Virginia.

93.     At the time of the search and seizure of Plaintiff JOHN FINKELSTEIN's digital

25

devices there was a Regional Computer Forensics Laboratory in San Mateo County that was available to forensically examine and search Plaintiff JOHN FINKELSTEIN's digital devices in San Mateo County where they would be subject to the further orders of the judge who issued the warrant authorizing their seizure.

94.     As a result of Defendant CICHOCKI's extrajudicial seizure of Plaintiff JOHN FINKELSTEIN's property the contents of Plaintiff JOHN FINKELSTEIN's computers, hard drives and cell phones were unlawfully searched, and the personal and private information stored on them was unlawfully viewed and copied, without judicial authorization.

95.     Defendant JANGLA approved the release of the property seized from Plaintiff JOHN FINKELSTEIN to Defendant CICHOCKI for further searching in Virginia. But for Defendant JANGLA's approval of the release of the property seized from Plaintiff JOHN FINKELSTEIN to Defendant CICHOCKI, Plaintiff JOHN FINKELSTEIN's seized property would not have been released to Defendant CICHOCKI and subjected to extrajudicial searching and copying in Virginia.

96.     The search of Plaintiff JOHN FINKELSTEIN's seized property in Virginia failed to find any child pornography or any other evidence of a crime.

97.     When Defendant CICHOCKI seized Plaintiff JOHN FINKELSTEIN's property and transported it to Virginia for further searching he had no probable cause to believe that Plaintiff JOHN FINKELSTEIN's seized property contained evidence of a crime or contraband nor were there any exigent circumstances.

98.     The searching of Plaintiff JOHN FINKELSTEIN's computers, hard drives and cell phones in Virginia was a warrantless and unreasonable search of Plaintiff JOHN FINKELSTEIN's property because the searching was carried out without judicial authorization and without probable cause to believe that these devices contained evidence of a crime or contraband and without exigent circumstances.

99.     One of the computers seized from Plaintiff JOHN FINKELSTEIN was a laptop computer provided to him by his employer which contained trade secret and confidential business information. As a result of the seizure of his employer's computer, Plaintiff JOHN FINKELSTEIN had to inform his employer that the company computer provided to him by his employer had been

26

seized by the police with a search warrant.

100.    In addition to the compensation for damages that Plaintiffs seek for the searching and seizing which took place in San Mateo, Plaintiff JOHN FINKELSTEIN also seeks compensatory and punitive damages from Defendants for the unlawful and warrantless removal of the property seized from him in San Mateo to Virginia and the extrajudicial searching and copying of the contents of his seized property in Virginia.

State Court Proceedings

101.    On February 16, 2016, Plaintiff JOHN FINKELSTEIN's lawyer hand delivered a letter to San Mateo County District Attorney Wagstaffe ("Wagstaffe Letter"). The letter explained that the ownership of the email address used in the RYAN Affidavit to connect Plaintiff JOHN FINKELSTEIN to the Skype account had not been verified by Skype and how easy it was to create a Skype account just by typing a random email address into the Skype account registration form.

102.    The letter further explained that it was a widely known fact that Skype allows accounts to be created with other people's email addresses and that mainstream media news organizations such as NBC NEWS, Forbes, CNN, Next Web, and Newsmax had reported as far back as 2012 on the internet that Skype accounts could be created with other people's email addresses. Included with the letter were copies of these news reports.

103.    On March 14, 2016, Plaintiff JOHN FINKELSTEIN filed a motion in the San Mateo County Superior Court after the San Mateo District Attorney failed to respond to this letter. The motion sought the return of the property seized from Plaintiff JOHN FINKELSTEIN and challenged the grounds on which the RYAN Warrant issued.

104.    The San Mateo County District Attorney and the San Mateo City Attorney both opposed Plaintiff JOHN FINKELSTEIN's motion.

105.    On October 12, 2017, after four-and-one-half days of testimony, the San Mateo Superior Court judge who issued the RYAN Warrant declared it invalid and voided it.

**FIRST CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 1983**

**Judicial Deception Claim**

**(Against Defendants CICHOCKI, RYAN and JANGLA)**

106.    The allegations contained in the preceding paragraphs are hereby incorporated herein by reference.

107.    Defendants CICHOCKI, RYAN and JANGLA used judicial deception to procure a search warrant which they then used to search Plaintiffs' residence, vehicles, computers, hard drives and cell phones for child pornography. Defendants CICHOCKI, RYAN and JANGLA violated Plaintiffs' Fourth Amendment rights to be secure in their residence, person and property against unreasonable searches and seizures by using judicial deception to procure this search warrant.

108.    As a direct, proximate and foreseeable result of the violation of Plaintiffs' Fourth Amendment rights by Defendants CICHOCKI, RYAN and JANGLA, Plaintiffs have suffered, are suffering, and will continue to suffer injuries, including but not limited to invasion of privacy, humiliation, emotional distress, anxiety, stigma, and embarrassment. In addition, Plaintiff JOHN FINKELSTEIN has suffered damage to his professional reputation, impairment to his future earning capacity and incurred substantial legal expenses in state court proceedings brought to have the search warrant declared invalid and voided.

109.    Defendants CICHOCKI, RYAN and JANGLA acted with reckless indifference and callous disregard for Plaintiffs' rights by procuring a search warrant through the use of judicial deception thus entitling Plaintiffs to recover punitive damages from each of these defendants.

**SECOND CLAIM FOR RELIEF**

**Violation of 42 U.S.C. § 1983**

**Use of Untrustworthy Information to Establish Probable Cause**

**(Against Defendants CICHOCKI, RYAN and JANGLA)**

110.    The allegations contained in the preceding paragraphs are hereby incorporated herein by reference.

111.    Defendants CICHOCKI, RYAN and JANGLA used information which they knew or

28

should have known was untrustworthy to establish probable cause for a warrant to search Plaintiffs' residence, vehicles, computers, hard drives and cell phones for child pornography without probable cause. Defendants CICHOCKI, RYAN and JANGLA violated Plaintiffs' Fourth Amendment rights to be secure in their residence, person and property against unreasonable searches and seizures by using information which they knew or should have known was not sufficiently trustworthy to establish probable cause for a search warrant.

112.   As a direct, proximate and foreseeable result of the violation of Plaintiffs' Fourth Amendment rights by Defendants CICHOCKI, RYAN and JANGLA, Plaintiffs have suffered, are suffering, and will continue to suffer injuries, including but not limited to invasion of privacy, humiliation, emotional distress, anxiety, stigma, and embarrassment. In addition, Plaintiff JOHN FINKELSTEIN has suffered damage to his professional reputation, impairment to his future earning capacity and incurred substantial legal expenses in state court proceedings brought to have the search warrant declared invalid and voided.

113.   Defendants CICHOCKI, Defendant RYAN and Defendant JANGLA acted with reckless indifference and callous disregard for Plaintiffs' rights by procuring a search warrant through the use of judicial deception thus entitling Plaintiffs to recover punitive damages from each of these defendants.

### THIRD CLAIM FOR RELIEF

**Violation of 42 U.S.C. § 1983**

**Use of Untrustworthy Information To Procure a Warrant**

**(Against Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE**

**and CITY OF SAN MATEO)**

114.   The allegations contained in the preceding paragraphs are hereby incorporated herein by reference.

115.   In violating Plaintiffs' Fourth Amendment rights by using information that was not sufficiently trustworthy to establish probable cause for a warrant to search Plaintiffs' residence, vehicles, computers, hard drives and cell phones for child pornography without probable cause, Defendants CICHOCKI, RYAN and JANGLA acted pursuant to the standard and accepted law

29

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Finkelstein v. San Mateo County District Attorney's Office*, United States District Court, Northern District of California, Case No. _____

enforcement practices of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO to prepare and approve search warrant applications which rely on untrustworthy information provided by internet criminals to online service providers, such as email addresses, to establish probable cause for a warrant without looking into whether the online service provider employs safeguards to prevent fraudulent information from being provided.

116.    The standard and accepted practices of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO of preparing and approving search warrant applications which rely on untrustworthy information provided by internet criminals to online service providers, such as email addresses, without looking into whether the online service provider employs safeguards to prevent fraudulent information from being provided creates a substantial risk that search warrant applications which lack probable cause will be submitted to judges and that search warrants will issue without probable cause.

117.    But for this standard and accepted practice of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO the RYAN Affidavit would not have been submitted to a judge and Plaintiffs' Fourth Amendment rights would not have been violated.

118.    As a direct, proximate and foreseeable result of this standard and accepted practice of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO, Plaintiffs have suffered, are suffering, and will continue to suffer injuries, including but not limited to invasion of privacy, humiliation, emotional distress, anxiety, stigma, and embarrassment. In addition, Plaintiff JOHN FINKELSTEIN has suffered damage to his professional reputation, impairment to his future earning capacity and has incurred substantial legal expenses in state court proceedings brought to have this search warrant declared invalid and voided.

## FOURTH CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1983

**Use of Search Warrant Application Lacking Probable Cause on its Face to Procure a Warrant**

**(Against Defendants CICHOCKI, RYAN and JANGLA)**

119.    The allegations contained in the preceding paragraphs are hereby incorporated herein

30

by reference.

120.    Defendants CICHOCKI, RYAN and JANGLA procured a warrant to search Plaintiffs' residence, vehicles, computers, hard drives and cell phones for child pornography with a search warrant application that lacked probable cause on its face. Defendants CICHOCKI, RYAN and JANGLA violated Plaintiffs' Fourth Amendment rights to be secure in their residence, person and property against unreasonable searches and seizures by using a search warrant application that lacked probable cause on its face to procure this search warrant.

121.    As a direct, proximate and foreseeable result of the violation of Plaintiffs' Fourth Amendment rights by Defendants CICHOCKI, RYAN and JANGLA, Plaintiffs have suffered, are suffering, and will continue to suffer injuries, including but not limited to invasion of privacy, humiliation, emotional distress, anxiety, stigma, and embarrassment. In addition, Plaintiff JOHN FINKELSTEIN has suffered damage to his professional reputation, impairment to his future earning capacity and incurred substantial legal expenses in state court proceedings brought to have the search warrant declared invalid and voided.

122.    Defendants CICHOCKI, RYAN and JANGLA acted with reckless indifference and callous disregard for Plaintiffs' rights by procuring a search warrant through the use of a search warrant application that lacked probable cause on its face which they then used to search Plaintiffs' residence, vehicles, computers, hard drives and cell phones for child pornography, thus entitling Plaintiffs to recover punitive damages from each of these defendants.

## FIFTH CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1983

### Unreasonable Search and Seizure without a Warrant,

### without Probable Cause and without Exigent Circumstances

### (Against Defendants CICHOCKI, RYAN and JANGLA)

123.    The allegations contained in the preceding paragraphs are hereby incorporated herein by reference.

124.    Defendants RYAN and JANGLA turned over to Defendant CICHOCKI computers, hard drives and cell phones seized from Plaintiff JOHN FINKELSTEIN pursuant to the RYAN

31

Warrant so that they could be searched in Virginia without judicial authorization, probable cause or exigent circumstances. Defendant CICHOCKI then had this seized property unlawfully searched and forensically examined in Virginia without a warrant, judicial authorization, probable cause or exigent circumstances. These actions by Defendants CICHOCKI, RYAN and JANGLA violated Plaintiff JOHN FINKELSTEIN's Fourth Amendment right not to have his privacy unlawfully invaded through the unreasonable seizure and search of his property.

125.    As a direct, proximate and foreseeable result of the violation of Plaintiff JOHN FINKELSTEIN's Fourth Amendment rights by Defendants CICHOCKI, RYAN and JANGLA, Plaintiff JOHN FINKELSTEIN has suffered, is suffering, and will continue to suffer injuries, including but not limited to invasion of privacy, stigma, and embarrassment. In addition, Plaintiff JOHN FINKELSTEIN has suffered damage to his professional reputation, impairment to his future earning capacity and incurred substantial legal expenses in state court proceedings brought to have the search warrant declared invalid and voided and the seized property returned to him.

126.    Defendants CICHOCKI, RYAN and JANGLA acted with reckless indifference and callous disregard for Plaintiff JOHN FINKELSTEIN's Fourth Amendment rights by turning over computers, hard drives, and cell phones seized from him to Defendant CICHOCKI for searching and examination in Virginia without a warrant, judicial authorization, probable cause or exigent circumstances thus entitling Plaintiff JOHN FINKELSTEIN to recover punitive damages from each of these defendants.

### PRAYER FOR RELIEF

Plaintiff JOHN FINKELSTEIN and JENNIFER FINKELSTEIN respectfully pray for relief as follows:

1.      For a declaratory judgment declaring that the standard and accepted law enforcement practices of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO to prepare and approve search warrant applications which rely on untrustworthy information provided by internet criminals to online service providers, such as email addresses, to establish probable cause for a warrant without looking into whether the online service provider employs safeguards to prevent fraudulent information from being provided, violates the Fourth Amendment of the Constitution of the United States and article I, section 13 of the California Constitution;

2.      For a declaratory judgment declaring that the standard and accepted law enforcement practices of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO to prepare and approve search warrant applications which rely on untrustworthy information provided by internet criminals to online service providers, such as email addresses, to establish probable cause for a warrant without looking into whether the online service provider employs safeguards to prevent fraudulent information from being provided, caused a violation of Plaintiffs' rights under the Fourth Amendment of the Constitution of the United States and article I, section 13 of the California Constitution;

3.      For a permanent injunction prohibiting the practices of Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY OF SAN MATEO of preparing and approving search warrant applications which rely on untrustworthy information provided by internet criminals to online service providers, such as email addresses, to establish probable cause for a warrant without looking into whether the online service provider employs safeguards to prevent fraudulent information from being provided;

4.      For compensatory, punitive, and statutory damages under 42 U.S.C. § 1983 against Defendants, and each of them, in an amount to be proven at trial, except no punitive damages are sought against Defendants SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE and CITY

33

OF SAN MATEO;

    5.    For costs of suit and attorneys' fees as required or authorized by applicable law, including but not necessarily limited to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 1988; and,

    6.    For all other relief the Court deems just and proper.

Dated: January 2, 2018        Respectfully Submitted,

By: _____

Mark E. Merin
Paul H. Masuhara
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
Telephone: (916) 443-6911
Facsimile: (916) 447-8336

Julius L. Finkelstein
LAW OFFICE OF JULIUS L. FINKELSTEIN
P.O. Box 61024
Palo Alto, California 94306
Telephone: (415) 793-5390

Attorneys for Plaintiffs
JOHN FINKELSTEIN and
JENNIFER FINKELSTEIN

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Finkelstein v. San Mateo County District Attorney's Office*, United States District Court, Northern District of California, Case No. _____

1

## JURY TRIAL DEMAND

2

A JURY TRIAL IS DEMANDED on behalf of Plaintiffs JOHN FINKELSTEIN and

3

JENNIFER FINKELSTEIN.

4

Dated: January 2, 2018                    Respectfully Submitted,

5

6

By: _____

7

Mark E. Merin
Paul H. Masuhara

8

LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300

9

Sacramento, California 95814
Telephone: (916) 443-6911

10

Facsimile: (916) 447-8336

11

Julius L. Finkelstein
LAW OFFICE OF JULIUS L. FINKELSTEIN

12

P.O. Box 61024
Palo Alto, California 94306

13

Telephone: (415) 793-5390

14

Attorneys for Plaintiffs
JOHN FINKELSTEIN and

15

JENNIFER FINKELSTEIN

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT; DEMAND FOR JURY TRIAL**
*Finkelstein v. San Mateo County District Attorney's Office*, United States District Court, Northern District of California, Case No. _____