UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN FINKELSTEIN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SAN MATEO COUNTY DISTRICT ATTORNEY'S OFFICE, et al.,<br><br>    Defendants. | Case No. 18-cv-00009-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR STAY**<br><br>Docket No. 13 |

Plaintiffs John and Jennifer Finkelstein have filed a § 1983 case against persons and entities who procured and/or assisted in procuring a search warrant against Mr. Finkelstein. Defendants are Jeffrey S. Cichocki, the City of San Mateo, Nicolas Ryan (a City employee), the San Mateo County District Attorney's Office, and Vishal D. Jangla (a County employee). Currently pending before the Court is a motion to dismiss or stay brought by two of the defendants – namely, Mr. Ryan and the City of San Mateo (collectively, "San Mateo Defendants"). The motion is based on *Younger* abstention. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **DENIES** the motion.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs John and Jennifer Finkelstein have filed a § 1983 case against persons and entities who procured and/or assisted in procuring a search warrant against Mr. Finkelstein. These persons and entities include the San Mateo Defendants. The warrant that ultimately issued resulted in a search of Mr. Finkelstein's residence and cars for child pornography, and items seized included computers, external hard drives, and cell phones. Evidently, nothing inculpatory was found and Mr. Finkelstein was never charged with any crime.

Subsequently, Mr. Finkelstein initiated a special proceeding under California Penal Code

§§ 1539-40 to challenge the search warrant and to recover computers, hard drives, and cell phones that were seized from him pursuant to the warrant. *See* Defs.' RJN, Ex. A (motion)[1]; Compl., Ex. B (order on motion). California Penal Code § 1539 provides in relevant part that, "if the grounds on which the warrant was issued are controverted and a motion to return property is made . . . by a person who is not a defendant in a criminal action at the time the hearing is held, the judge or magistrate shall proceed to take testimony in relation thereto." Cal. Pen. Code § 1539. Section 1540 provides in relevant part: "If it appears . . . that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause [the property taken] to be restored to the person from whom it was taken." *Id.* § 1540. The DA's Office and the San Mateo City Attorney both opposed Mr. Finkelstein's request for relief. *See* Compl. ¶ 27.

In October 2017, a California superior court judge granted Mr. Finkelstein's motion to traverse the search warrant. The superior court declared the search warrant invalid and voided it. The City of San Mateo (and not the state) appealed in December 2017. *See* Defs.' RJN, Ex. B (notice of filing of appeal). It appears that that appeal (Case No. A153206) is still pending.[2] *See* Defs.' RJN, Ex. C (docket sheet).

In the meantime, the Finkelsteins initiated this federal court action, asserting the following causes of action (all related to the search warrant that was obtained against Mr. Finkelstein):

---

[1] The Finkelsteins have objected to the San Mateo Defendants' request for judicial notice on the grounds of (1) failure to demonstrate admissibility under Federal Rule of Evidence 201; (2) failure to authenticate; and (3) irrelevance. The objections are overruled. The documents offered by the San Mateo Defendants are primarily state court documents that have been filed. While the Court may not consider the truth of the content of the documents, the Court may take judicial notice of the fact that the documents were filed. As for relevance, clearly, the documents are relevant to the pending issue before the Court – *i.e.*, *Younger* abstention which requires consideration of whether there are ongoing state court proceedings.

[2] There was an independent proceeding in state court that also concerns the search warrant; however, that proceeding has concluded. More specifically, in November 2017, the State of California and the City of San Mateo filed before a state appellate court a petition for a writ of mandate and/or certiorari (Case No. A152939). In that petition, the governmental entities argued, *inter alia*, that (1) the state superior court acted in excess of its jurisdiction by granting a motion to quash a warrant, not as part of a return-of-property or suppression adjudication but rather to clear Mr. Finkelstein's name; (2) the state superior court abused its discretion in rendering a decision in a moot case (*i.e.*, property had been returned to Mr. Finkelstein); and (3) the state superior court's finding that Mr. Ryan had made a reckless, material misstatement of fact was not supported by substantial evidence. *See* Defs.' RJN, Ex. D (petition). The petition for relief was denied as moot on December 1, 2017. *See* Merin Decl., Ex. A (docket sheet).

1. (1) Judicial deception in violation of § 1983 (against the individual defendants only);

2. (2) Use of untrustworthy information to establish probable cause in violation of § 1983 (against the individual defendants only);

3. (3) Use of untrustworthy information to procure a warrant in violation of § 1983 (against the DA's Office and City only);

4. (4) Use of search warrant application lacking probable cause on its face to procure a warrant in violation of § 1983 (against the individual defendants only); and

5. (5) Unreasonable search and seizure without a warrant, probable cause, and exigent circumstances in violation of § 1983 (against the individual defendants only).

## II. DISCUSSION

Currently pending before the Court is the San Mateo Defendants' motion to dismiss or stay pursuant to *Younger* abstention.

> The case that gave its name to the *Younger* abstention doctrine originated when a criminal defendant sought a federal court injunction under 42 U.S.C. § 1983 against a pending state court prosecution, contending that the statute under which he was being prosecuted violated the First Amendment. 401 U.S. at 41. Relying in part on traditional equitable principles and in part on considerations of comity among dual judicial systems grouped under the term "Our Federalism," *id.* at 44, *Younger* reiterated a "longstanding public policy against federal court interference with state court proceedings," such that "the normal thing to do when federal courts are asked to enjoin pending [criminal] proceedings in state courts is not to issue such injunctions." *Id.* at 43, 45; *see also id.* at 46 (stressing "the fundamental policy against federal interference with state criminal prosecutions"); *id.* at 53 (referring to "settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions").

*Green v. City of Tucson*, 255 F.3d 1086, 1094 (9th Cir. 2001), *overruled in part on other grounds by Gilbertson v. Albright*, 381 F.3d 965, 982 (9th Cir. 2004). As indicated by the above, *Younger* arose in the context of criminal proceedings and evidences particular solicitude by the federal courts towards ongoing state criminal proceedings. Where there is a parallel civil case, abstention doctrines other than *Younger* may apply,[3] but generally *Younger* does not. Admittedly, the

---

[3] *See, e.g.*, *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011) (noting that, "'[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the

3

Supreme Court has extended the *Younger* doctrine to some ongoing state civil proceedings but that extension is narrow in scope; that is, "the *Younger* principle [has been extended] to civil enforcement actions 'akin to' criminal proceedings and to suits challenging 'the core of the administration of a State's judicial system.'" *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014).

Thus, under current law, *Younger* abstention applies only when the state proceedings: (1) are ongoing, (2) are criminal or quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges. *See id.* at 759. "If these 'threshold elements' are met, [a court] then consider[s] whether the federal action would have the practical effect of enjoining the state proceedings . . . ." *Id.* *Younger* abstention "remains an extraordinary and narrow exception to the general rule" that "[a] federal court's obligation to hear and decide a case is virtually unflagging." *Arevalo v. Hennessy*, No. 17-17545, 2018 U.S. App. LEXIS 3210, at *5 (9th Cir. Feb. 9, 2018) (internal quotation marks omitted).

*Younger* abstention does not apply to the instant case for at least two reasons. First, the only ongoing state court proceeding on which the San Mateo Defendants rely is the appeal of the state court's order which invalidated and voided the search warrant as part of a special proceeding under California Penal Code §§ 1539-40. That action was a post facto challenge to the legality of the search warrant and sought to recover computers, hard drives, and cell phones that were seized from Mr. Finkelstein pursuant to the warrant. Mr. Finkelstein was never charged with any crime, and thus was never a criminal defendant subject to a criminal prosecution. Thus, there is no ongoing criminal prosecution which might be the basis for *Younger* abstention to apply. Moreover, the ongoing state proceeding here cannot be characterized as a civil enforcement action akin to a criminal prosecution. *See, e.g.*, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604-05 (1975) (a civil nuisance proceeding). Therefore, the first element of *Younger* abstention can be satisfied

---

state court is no bar to proceedings concerning the same matter' in a federal court" but that there are "exceptions to the general rule concerning concurrent state and federal proceedings" – *e.g.*, *Wilton*/*Brillhart* and *Colorado River*).

4

only if the state proceeding at issue here "involv[es] certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Communs., Inc. v. Jacobs*, 134 S. Ct. 584, 591-92 (2013) (internal quotation marks omitted). The Ninth Circuit has described such orders as orders "at the 'core' of the judicial process"; orders "involv[ing] the administration of the state judicial process"; and orders implicating "the process by which a state 'compel[s] compliance with the judgments of its courts.'" *ReadyLink*, 754 F.3d at 759. Examples of such orders include the following: a civil contempt order, a requirement for posting bond pending appeal, or an appointment of a receiver. *See id. Compare Portrero Hills Landfill, Inc. v. County of Solano*, 657 F.3d 876, 887 (9th Cir. 2011) (noting that plaintiff's "suit challenges neither the authority of state courts to issue such writs [of mandate] nor processes for their enforcement once issued").

In *Cook v. Harding*, 879 F.3d 1035 (9th Cir. 2018), the Ninth Circuit recently addressed the issue of whether a state court proceeding fell within the ambit of this category. The plaintiff in *Cook* entered into a gestational surrogacy agreement with an individual. The relationship between the plaintiff and the individual soured before the children were born. The plaintiff thus filed a complaint in state superior court, alleging that a state statute finding gestational surrogacy contracts enforceable was unconstitutional. The state court rejected the complaint as being filed in the wrong court and without proper service. The individual who had contracted with the plaintiff then filed a petition in the state Children's Court to enforce the contract; the plaintiff responded with a counterclaim challenging the validity of the contract and the constitutionality of the state statute. The next day, the plaintiff filed a nearly identical complaint in federal district court against the individual as well as state and county personnel, raising her constitutional claims under 42 U.S.C. § 1983. The district court abstained pursuant to *Younger* but the Ninth Circuit reversed.

The defendants argued that *Younger* abstention was applicable because the state action was the right kind of ongoing state proceeding – one involving the state's interest in enforcing the orders and judgments of its courts. The Ninth Circuit disagreed, explaining as follows:

> Defendants contend that the [state court] case falls within this
> category because challenges to parentage determinations could
> impede the state courts' ability to make other decisions based on that

5

> parental status, such as custody and child support. This is an argument regarding the state courts' power to apply its laws in subsequent proceedings and the state's interest in its interrelated family laws. *It does not relate to the state courts' ability to enforce compliance with judgments already made.*
>
> Following *Sprint*, we have made clear that the category of cases involving the state's interest in enforcing its courts' orders and judgments does not include cases involving "a 'single state court judgment' interpreting [a private agreement] and state law" because such cases do not implicate "the process by which a state 'compel[s] compliance with the judgments of its courts.'" *Cook does not question the process by which California courts compel compliance with parentage determinations under state law.* Rather, she alleges that Section 7962 is unconstitutional. Cook accordingly challenges the legislative prescriptions of Section 7962. As the Court held even before *Sprint*, *Younger* does not "require[] abstention in deference to a state judicial proceeding reviewing legislative . . . action."

2018 U.S. App. LEXIS 887, at *10-11 (emphasis added). *Compare, e.g.*, *Juidice v. Vail*, 430 U.S. 327, 335 (1977) (stating that the contempt process is how a state "vindicates the regular operation of its judicial system"; also stating "[t]he contempt power lies at the core of the administration of a State's judicial system").

The instant case is analogous to *Cook*. Like the state proceeding in *Cook*, the state proceeding at issue here – *i.e.*, the appeal of the state superior court order invalidating and voiding the search warrant issued against Mr. Finkelstein – does not involve an order that is at the core of the judicial process; it does not involve the administration of the state judicial process or implicate the process by which a state compels compliance with the judgments of its courts. As the San Mateo Defendants admit, in the appeal, the government is simply asking whether a "judicial remedy is still available once the seized property has [already] been returned to the complainant." Mot. at 4. Neither the government nor Mr. Finkelstein is challenging the *process* by which by which California courts decide whether seized property should be returned to a person subject to a search warrant but never charged as a criminal defendant. Indeed, Mr. Finkelstein's action is akin, if anything, to a post-facto civil rights claim seeking relief for governmental wrongdoing.

Perhaps recognizing the weakness of their position, the San Mateo Defendants made a new argument in their reply brief – namely,

> that California Penal Code §§ 1539-1540 establish[] a special proceeding by which the judicial officer who issued a search warrant can later review that decision in the context of returning the seized

6

|   |   |
|---|---|
| 1 | property. At its core, [the proceeding] is about the California courts' ability to review their own previously issued orders – its own administration of its judicial process. |
| 2 |   |

Reply at 4.

But this argument is not persuasive. That a court has the ability to (in essence) reconsider a decision does not mean that a core aspect of the administration of the state judicial process is at issue. To hold that all §§ 1539-40 proceedings would automatically qualify for *Younger* abstention would lead to an unwarranted expansion of *Younger* which the Supreme Court reined in with *Sprint*.

Second, even if the San Mateo Defendants were correct on the first *Younger* element (they are not), as noted above, "[*Younger*] abstention is only appropriate in the narrow category of circumstances in which the federal court action would actually 'enjoin the [ongoing state] proceeding, or have the practical effect of doing so.'" *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007). According to the San Mateo Defendants, this requirement has been met in the instant case because the federal action could have a preclusive effect on the pending state proceeding. But the Ninth Circuit has clearly held that this *Younger* requirement is not satisfied just because there is a potential conflict between the federal and state court proceedings. *See id.* This requirement is not met simply because "the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it." *Id.* "'[T]he possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of 'exceptional' circumstances, . . . that possibility alone is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them.'" *Id.*; *see also ReadyLink*, 754 F.3d at 759 (noting that "the mere possibility of inconsistent federal and state court judgments" is not enough to justify *Younger* abstention or it would "swallow whole both Colorado River abstention and preclusion"). Otherwise the doctrine of collateral estoppel would be enlarged and result regularly in *Younger* abstention, a result not countenanced by case law.[4]

---

[4] *Cf. Carmona v. Carmona*, 544 F.3d 988 (9th Cir. 2008) (noting that "the *Rooker-Feldman* doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss or stay based on *Younger* abstention is denied.

This order disposes of Docket No. 13.

**IT IS SO ORDERED.**

Dated: March 20, 2018

_____
EDWARD M. CHEN
United States District Judge

---

judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments'" – "[i]n practice, . . . a fairly narrow preclusion doctrine, separate and distinct from res judicata and collateral estoppel").

8